[Cite as *In re H.G.*, 2012-Ohio-1977.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: | JUDGES:<br>Hon. Sheila G. Farmer, P. J.<br>Hon. John W. Wise, J. |
| H.G.,<br>F.G., JR., and | Hon. Julie A. Edwards, J. |
| F.G. | Case Nos. 11 CA 42, 11 CA 43 |
| MINOR CHILDREN | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Case Nos. 10 JC 00387 and 11 JC 00296 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | May 3, 2012 |

APPEARANCES:

For Appellee

DANIEL G. PADDEN
PROSECUTING ATTORNEY
139 West 8th Street
Post Office Box 640
Cambridge, Ohio 43725

For Appellant Mother

LINDSEY K. DONEHUE
116 Southgate Parkway
Post Office Box 464
Cambridge, Ohio 43725

For Appellant Father

ANDREW J. WARHOLA
110 North 7th Street
Cambridge, Ohio 43725

*Wise, J.*

{¶1} Appellants Cara Gibson and Fred Gibson appeal the decision of the Guernsey County Court of Common Pleas, Juvenile Division, which granted permanent custody of their three minor children to Appellee Guernsey County Children Services.

STATEMENT OF THE FACTS AND CASE

{¶2} The relevant facts leading to this appeal are as follows.

{¶3} Appellants Cara Gibson and Fred Gibson are the biological parents of the three minor children at issue in this matter, H.G., born 11/4/07, F.G., Jr., born 9/17/09, and F.G., born 5/19/11.

{¶4} On September 22, 2009, the Guernsey County Juvenile Court awarded Temporary custody of H.G. to the Guernsey County Children Services Board (hereinafter "GCCSB").

{¶5} On October 6, 2009, the Guernsey County Juvenile Court awarded Temporary custody of F.G., Jr. to GCCSB.

{¶6} On November 19, 2009, the Guernsey County Juvenile Court terminated Temporary Custody with GCCSB, and awarded temporary custody to paternal aunt, Shelley Valentine. At that time, protective supervision was awarded to GCCSB for a six month period.

{¶7} On December 14, 2009, the Guernsey County Juvenile Court terminated the case, reunifying both children with their parents.

{¶8} On January 4, 2010, F.G., Jr. was safety planned with paternal aunt, due to allegations of medical neglect.

**{¶9}** On July 2, 2010, GCCSB received a report that H.G. was found wandering alone near the Cambridge City Park. Allegations of neglect were substantiated by GCCSB, and GCCSB received ex parte custody of H.G. and F.G., Jr. on July 2, 2010.

**{¶10}** On July 6, 2010, temporary custody was terminated with GCCSB and given to paternal aunt, Shelley Valentine. Case plan objectives were established by GCCSB for both Appellant-Mother and Appellant-Father at that time.

**{¶11}** On September 23, 2010, Appellant-Mother was indicted by the Grand Jury for "Theft", "Identity Fraud", and "Misuse of Credit Cards".

**{¶12}** On March 24, 2011, Appellant-Mother was convicted of "Identity Fraud", a felony of the Fifth Degree, and was sentenced to eleven months of prison (suspended), 3 years probation.

**{¶13}** On August 24, 2011, Appellant-Mother was incarcerated at Eastern Ohio Correction Center for a period of four to six months.

**{¶14}** On September 27, 2010, paternal aunt, Shelley Valentine, returned the children to GCCSB, stating she could no longer handle the children. GCCSB was granted ex parte custody of H.G. and F.G.

**{¶15}** On December 21, 2010, H.G. and F.G., Jr. were adjudicated dependent children, and neglect was also found with respect to H.G. Case plans dated August 13, 2010 and September 30, 2010 were approved at that time.

**{¶16}** On May 19, 2011, F.G. was born.

**{¶17}** On May 23, 2011, the GCCSB was granted ex parte custody of F.G. upon that child's release from the hospital after birth.

{¶18} On May 23, 2011, GCCSB filed a complaint alleging F.G. to be an abused, neglected, and dependent child.

{¶19} On June 10, 2011, GCCSB filed an amended complaint requesting permanent custody of F.G, and a motion for permanent custody of H.G. and F.G., Jr.

{¶20} On June 16, 2011, GCCSB requested relief from reasonable efforts for F.G.

{¶21} On August 10, 2011, a case plan was filed, which contained the same requirements for both parents, but added F.G. to the case plan.

{¶22} On September 12 and 13, 2011, and November 10, 2011, a Permanent Custody hearing for all three children was held.

{¶23} On December 9, 2011, the trial court filed its order granting permanent custody of all three children to GCCSB.

{¶24} Appellant-Mother and Appellant-Father filed separate appeals as to both juvenile court case numbers, raising the following errors for review:

### ASSIGNMENTS OF ERROR

### APPELLANT-MOTHER

{¶25} "I. THE TRIAL COURT SHOULD NOT HAVE GRANTED PERMANENT CUSTODY BECAUSE THE CHILDREN COULD HAVE BEEN PLACED WITH THE PARENTS WITHIN A REASONABLE TIME AND THE GRANTING OF PERMANENT CUSTODY WAS NOT IN THE CHILDREN'S BEST INTEREST.

{¶26} "A) H.G., F.G., AND F.G. COULD HAVE BEEN PLACED WITH THEIR PARENTS WITHIN A REASONABLE TIME BECAUSE NONE OF THE SIXTEEN FACTORS STATED IN 2151.414(E) APPLY.

{¶27} "B) THE COURT DID NOT FULLY AND SPECIFICALLY DISCUSS ALL FIVE FACTORS WHICH DETERMINE THE BEST INTEREST OF THE CHILDREN AS REQUIRED BY ORC 2151.414(D).

{¶28} "II. THE COURT DID NOT MAKE A DETERMINATION THAT GUERNSEY COUNTY CHILDREN SERVICES WERE NOT REQUIRED TO MAKE REASONABLE EFFORTS TO PREVENT THE REMOVAL OF THE CHILDREN FROM THEIR HOME AS REQUIRED BY 2151.419(A)(2)."

<u>APPELLANT-FATHER</u>

{¶29} "I. THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY OF THE THREE CHILDREN TO THE GUERNSEY COUNTY CHILDREN SERVICES BOARD BECAUSE IT FAILED TO FOLLOW THE REQUIREMENTS OF R.C. 2151.414(B)(2), 2151.413(D)(2) AND 2151.419(A)(2).

{¶30} "II. THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY OF THE THREE CHILDREN TO THE GUERNSEY COUNTY CHILDREN SERVICES BOARD BECAUSE IT FAILED TO SPECIFICALLY CONSIDER AND ADDRESS ALL FIVE FACTORS CONTAINED IN R.C. 2151.414(D)(1) REGARDING THE BEST INTERESTS OF THE CHILDREN AND IT FAILED TO EXPLAIN ITS REASONING FROM THE EVIDENCE AS TO EACH FACTOR.

{¶31} "III. THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY OF THE THREE CHILDREN TO THE GUERNSEY COUNTY CHILDREN SERVICES BOARD BECAUSE CHILDREN SERVICES FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILDREN COULD NOT BE REUNIFIED WITH THEIR FATHER WITHIN A REASONABLE PERIOD OF TIME OR

SHOULD NOT BE PLACED WITH THE PARENT FATHER PURSUANT TO R.C. 2151.414(E)."

{¶32} For purposes of judicial economy, we shall address the two cases together as they raise the same legal challenges

**ASSIGNMENTS I, II (Case No. 11 CA 42)**

**ASSIGNMENTS I, II AND III (CASE NO. 11 CA 43)**

{¶33} Appellants contend the trial court erred in determining that the children cannot or should not be placed with either of the parents within a reasonable time and in granting permanent custody of their minor children to GCCSB. We disagree.

{¶34} In this case, GCCSB moved the trial court for permanent custody pursuant to R.C. §2151.414(B)(2), which states in pertinent part:

{¶35} "(B)(2) With respect to a motion made pursuant to division (D)(2) of section 2151.413 of the Revised Code, the court shall grant permanent custody of the child to the movant if the court determines in accordance with division (E) of this section that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of this section that permanent custody is in the child's best interest."

{¶36} In determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, a trial court is to consider the existence of one or more factors under R.C. §2151.414(E), including whether or not:

{¶37} "Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist

the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." See R.C. §2151.414(E)(1).

**{¶38}** While appellants maintain that the trial court erred in finding that the children could not or should not be placed with their parents within a reasonable time, we disagree. We note that there was extensive testimony that Appellants failed to comply with their case plans.

**{¶39}** Caseworker Sylvia Lawson testified as to the case plan of the parents, and to GCCSB's efforts to reunify the children with their parents. She testified that the safety plan implemented by the agency required: (1) the parents provide a safe and stable home for the children, free of domestic violence and drug use; (2) that the parents schedule and attend the medical appointments for all three children; (3) that the parents follow any and all mental health recommendations; (4) that parents sign releases of information; (5) that parents refrain from using illegal drugs and submit to random drug screens; (6) that parents attend drug and alcohol counseling and follow all recommendations, and (7) that there be no domestic violence. (Jr. 164-165).

**{¶40}** Ms. Lawson further testified that Appellant-Mother was non-compliant with the case plan, as evidenced by the fact that she was incarcerated at the time of the

hearing for multiple positive drug tests; that the parents had been evicted from their home and all utilities had been shut off; that Appellant-Mother continued to have positive drug screens; that there had been threats of domestic violence by Appellant-Father toward Appellant-Mother; that Appellant-Mother was currently under sanctions from Department of Job and Family Services, and unable to receive any benefits due to non-compliance with the service plan DJFS had put into effect; that Appellant-Mother failed to attend the children's medical appointments despite being given notice by the caseworker; that Appellant-Mother was not cooperating with Help Me Grow; that Appellant-Mother had been unsuccessfully discharged with drug and alcohol services; and that Appellant-Mother had been non-complaint with random drug screens. (T. at 166-167, 170-171, 174-175, 179).

{¶41} Ms. Lawson also provided testimony that Appellant-Father had not complied with the case plan. She stated that Appellant-father had not found safe and stable housing as he was homeless at the time of the permanent custody hearing; that Appellant-Father had not kept the home free of domestic violence and illegal drugs; that he had not complied with random drug screens, having taken only one of three requested; and that he refused to speak with caseworker, refused to allow home visits, and kicked the caseworker out of his home on two occasions. (T. at 189-194)

{¶42} Finally, Ms. Lawson testified that out of 104 scheduled visits with the children, mother only attended 48 and father only attended 30. (T. at 183-184).

{¶43} The trial court also heard from Patty Johnson from Guernsey County Drug and Alcohol Services, who testified that Appellant-Mother had poor attendance at counseling, was in denial that she has a problem, and failed to successfully complete

treatment. (T. at 20, 24). She further testified that Appellant-Mother only attended 6 of 19 scheduled appointments, failed to attend group counseling multiple times, and repeatedly tested positive for marijuana (T. at 20, 22).

**{¶44}** Further, Ben Troendley from Guernsey County Drug and Alcohol Services testified that Appellant-Mother was required to attend group counseling every Thursday, and that she had finally been dismissed from group for nonattendance on August 19, 2010. (T. at 32). Appellant-Mother was allowed to readmit to group on August 26, 2010, but that she was again dismissed for nonattendance on September 19, 2010. (T. at 33). She was readmitted to group again on December 21, 2010, but was terminated again on February 17, 2011, after failing to attend between those dates, (T. at 34).

### BEST INTERESTS

**{¶45}** Appellants also argue that the trial court's finding that it was in the children's best interest for permanent custody to be granted was against the manifest weight of the evidence.

**{¶46}** In determining the best interest of a child for purposes of permanent custody disposition, the trial court is required to consider the factors contained in R.C. §2151.414(D). These factors are as follows:

**{¶47}** "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;

**{¶48}** "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

**{¶49}** "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

**{¶50}** "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

**{¶51}** "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

**{¶52}** Initially, we note that as an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Guernsey App.No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. Furthermore, it is well-established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown,* Summit App.No. 21004, 2002-Ohio-3405, ¶ 9, citing *State v. DeHass* (1967), 10 Ohio St .2d 230, 227 N.E.2d 212

**{¶53}** In the instant case, the caseworker testified that the children were doing well in their foster placement; that F.G. Jr. had spent all but two weeks of his two years of life in out-of-home placement; that F.G. had been in placement since her birth, and

that H.G. had spent fifteen months in out-of-home placement. (T. at 200-202). The caseworker further testified that the children had a need for permanency, and that they had never had a stable home (T. at 203). Further, the caseworker testified that the children could not be reunited with their parents in a reasonable time, as GCCSB had been working with the mother for two years with "zero progress" and had likewise been working with father for the same length of time with "minimal cooperation". (T. at 204).

{¶54} In further support. the Guardian ad Litem testified that it was his recommendation that permanent custody be granted to GCCSB, due to the GCCSB history with the family, the fact that the parents were making no progress, and that they had been dealing with the same issues for two years (T. at 367-368).

{¶55} Appellants, in their respective briefs, further argue that the trial court erred in determining that the agency made the requisite efforts to prevent removal of the children from their home or made it possible for the children to return safely home.

{¶56} Pursuant to R.C. 2151.419, the agency which removed the child from the home must have made reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the home, or make it possible for the child to return home safely. The statute assigns the burden of proof to the agency to demonstrate it has made reasonable efforts. R.C. 2151.419 is generally not applicable to permanent custody proceedings. *In re C.F.,* 113 Ohio St.3d 73, 81, 2007–Ohio–1104, 862 N.E.2d 816.

{¶57} In the case sub judice, we find the agency did make reasonable efforts. As is stated above in detail, Appellants were provided with numerous services over an extended period of time.

{¶58} Based on the record in this matter, we find that trial court did not err in granting the motion for permanent custody.

{¶59}  Appellants' Assignments of Error are overruled.

{¶60}  For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Juvenile Division, Guernsey County, Ohio, is hereby affirmed.

By: Wise, J.

Farmer, P. J., and

Edwards, J., concur.

_____

_____

_____

JUDGES

JWW/d 0427

IN THE COURT OF APPEALS FOR GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:                            :
                                             :
    H.G.,                                :
    F.G., JR., and                       :          JUDGMENT ENTRY
    F.G.                                 :
                                             :
    MINOR CHILDREN                       :          Case Nos. 11 CA 42, 11 CA 43

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Guernsey County, Ohio, is affirmed.

Costs assessed to Appellants.

_____

_____

_____

JUDGES